Vern H. Moberg and Reta N. Moberg v. Commissioner.
Moberg v. Commissioner
Docket No. 47925.
United States Tax Court
T.C. Memo 1963-288; 1963 Tax Ct. Memo LEXIS 59; 22 T.C.M. (CCH) 1483; T.C.M. (RIA) 63288; October 22, 1963
*59 Held, that the subfranchises which were sold during the taxable years by a partnership of which petitioner Vern H. Moberg was a member were not held primarily for sale to customers in the ordinary course of business but represented capital assets sold and the gains from such sales are taxable as long-term capital gains; held, further, that the sellers were entitled to allocate to each sale a part of the cost basis of the master franchise; and held, further, that the purchase price of such sales consisted of the lump-sum payments and the gallonage payments, and the royalties were not a part of the sale price. The royalties are taxable as ordinary income. Carl F. Bauersfield and Charles H. Burton, for the petitioners. James D. Webb, III, and Wilford H. Payne, for the respondent. BLACK
Memorandum Findings of Fact and Opinion BLACK, Judge: Our original report in this proceeding is reported in . We there stated the issues to be: (1) Whether the transfer by petitioners of rights held under a master franchise for the use of Dairy Queen freezers constituted sales giving rise to long-term capital gains, or licenses giving rise to ordinary *60 income. (2) If the transfers were sales, whether petitioners held their rights primarily for sale to customers in the ordinary course of business. (3) If the transfers were sales, whether petitioners have established a reasonable method of allocating their basis in the rights sold. As to all of the transfers, except one, which had been made during the taxable years involved, we held for respondent on Issue 1. We, therefore, did not reach Issues 2 and 3 for decision as to those transactions except as the one transaction in which we held for petitioners, namely, the A. & M. Concessions, Inc. Petitioners appealed the decision which was against them except as to the A. & M. Concessions, Inc. Vern and Reta Moberg appealed to the United States Court of Appeals for the Fifth Circuit and Theodore and Pauline Moberg appealed the United States Court of Appeals for the Ninth Circuit. The Commissioner did not appeal our decision as to the A. & M. Concessions, Inc., transaction and we do not have before us that transaction. Decision on it has been entered and the decision has become final. The United States Court of Appeals for the Fifth Circuit has reversed us on the primary issue, namely, *61 whether the transfers were sales or licenses - it has held that they were sales. It goes without saying that we are bound by the decision in the Fifth Circuit on that issue as to Vern and Reta Moberg and we shall not undertake in any way to change it. The court, however, remanded the proceeding to us on other issues and stated in the concluding part of its opinion as follows: However, we are unable to determine from the record, nor apparently did the Tax Court consider the question whether the royalities were a part of the sales price of the subfranchises. We remand so that the Tax Court may determine this question of fact, after first determining whether the assets sold, the subfranchises, were held primarily for sale in the ordinary course of business so as not to constitute capital assets giving rise to capital gains. The further question of whether taxpayers, if the assets were not held primarily for sale to customers in the ordinary course of business, was entitled to allocate a portion of the cost of the master franchise to the subfranchises must also be determined. Thus, it will be seen that we have three issues to be determined on remand. It is, of course, not necessary *62 to restate our Findings of Fact reported in - they will remain as found. We were reversed in our Opinion as to the primary issue but not as to our Findings of Fact. We shall make such additional Findings of Fact on the respective remand issues as it seems necessary to make for their decision. Issue 1 Were the subfranchises which were sold by petitioners during the years 1948 and 1949 their stock in trade and were such sales made by petitioners to customers in the ordinary course of their trade or business? As we stated, our Findings of Fact in this proceeding are reported in and we see no need that they should be repeated here. We made no decision on this particular issue as to the subfranchises which the Fifth Circuit has held were sales - we held that they were sublicenses and not sales. We did hold in our former report that there was one transaction which represented a sale and that was as to the A. & M. Concessions, Inc. As to that sale we held: The territorial rights which petitioners granted under the Concessions agreement were not held by them primarily for sale to customers in the ordinary course of business. As to *63 the sublicenses which were before the United States Court of Appeals for the Fifth Circuit we now make the same sort of finding - they were not held by petitioners primarily for sale to customers in the ordinary course of business. Having made this finding, we decide the first issue submitted to us by the Fifth Circuit on remand for the petitioners. They are entitled to long-term capital gains treatment on these sales. Issue 2 In arriving at the petitioners' taxable gain on the sale of subfranchises, are the petitioners entitled to deduct from the payments received from such sales an amount representing the pro rata part of the petitioners' cost allocable to the area sold and, if so, on what basis? The facts with reference to petitioners' cost basis of the Dairy Queen master franchise for the States of Oregon and Washington are found in our report, , and need not be repeated here. On these facts we hold that petitioners are entitled, in the manner stated, to allocate a portion of the cost of the master franchise to the different subfranchises sold. We decide this issue for the petitioners. Issue 3 Were the royalties a part of the sales price of *64 the subfranchises? Our Findings of Fact on this issue are not as complete as they should be in order that we may decide this issue. While the several exhibits that were attached to the stipulation of facts which was filed at the hearing were incorporated in our report by reference, see , there were certain portions of these exhibits which should be incorporated in our Findings of Fact herein by quotations from them, for example, in the first subfranchise which was sold by petitioners December 17, 1947, as to which the Fifth Circuit calls attention to the fact that contracts of this type were executed thereafter with 10 additional purchases. That contract contains, among others, the following provisions: 1. That they will pay to the Sellers, in consideration of the above matters, as the purchase price therefor, the sum of FOUR THOUSAND AND NO/100 Dollars as follows: the sum of TWO THOUSAND AND NO/100 Dollars at the date of the execution of this Agreement, the receipt whereof is hereby acknowledged by Sellers from the Buyers, and the balance of TWO THOUSAND AND NO/100 Dollars to be paid at the rate of Fifteen Cents (15") a gallon on all mixes used or sold provided, *65 however, that if such amounts shall be less than the following amounts, that the latter shall govern the payments. From date hereof to Septem-
ber 15, 1948
$1,000.00
September 15, 1948 to Sep-
tember 15, 1949
1,000.00
2. And to pay to the Sellers, in addition to the above, the sum of Fourteen Cents (14") a gallon, in the nature of a royalty, on all mixes used in all freezers in the above territory. Where powdered or concentrated mix is used the royalty shall be based upon its equivalent in liquid mix. Four cents (4") of the above named royalty shall be forwarded to Hugh A. McCullough and John F. McCullough by the Sellers. The above amounts of royalty to be computed and paid monthly not later than the 5th day of the following month. The Buyers agree to pay royalties after the expiration of said patent or any extension thereof, as long as no one else uses said freezers in said territory. [Emphasis added.] Other sales agreements contained similar provisions as above quoted except as to amounts. Our Findings of Fact did not quote the above provisions of these contracts. But our report in contains findings of fact as to the lump-sum payments, *66 the gallonage payments, and the royalties received on the different contracts. For example, as to these 10-paragraph contracts, our findings are as follows: Petitioners received total lump-sum payments in 1948, gallonge payments on the fixed prices, and royalties for the years 1948, 1949, and 1950 under the 10-paragraph contracts as follows: Fixed price payments
Lump
Year
sum
Gallonage
Royalty
1948
$9,750
$8,292.09
$5,982.04
1949
6,533.93
20,393.81
1950
663.48
26,051.14
We held in our report that all of the above amounts were ordinary income to the partnership because we held that the contracts were subfranchises and did not represent sales. Now that the Fifth Circuit has reversed us on that primary issue, we must decide as to whether all of these above amounts were received as part of the sales price. It is clear, of course, that the lump-sum payments are part of the sales price and should be so treated. We think it is also plain that the gallonage payments represent a part of the sales price and should be so treated. The Dairy Queen stores partnership, of which petitioner Vern Moberg was a member, reported these royalty payments *67 in its 1948 and 1949 partnership returns as ordinary income. While it is true, of course, that the partnership of Dairy Queen stores so reported the royalties, that fact would not estop petitioner Vern Moberg from contending at a later date that these royalty payments were a part of the purchase price of the subfranchises sold and, therefore, did not constitute ordinary income but represented capital payments and should be so considered. Respondent does not contend that petitioner is estopped but he does contend that the royalties were ordinary income and not entitled to long-term capital gains treatment and that we should so hold. It seems to us that the royalties did not represent a part of the sales price of the subfranchises and that the parties did not so intend. We think these royalties were ordinary income and are not entitled to capital gains treatment - we so hold. See , Supplemental Opinion. In our report at , our Findings of Fact show the respective total amounts which were received as lump-sum payments, gallonage payments, and royalties on the different transactions here in *68 question. In accordance with the views herein expressed on this issue, the taxable income received from lump-sum payments and gallonage payments should be treated as long-term capital gain. The taxable income received from the royalties should be taxed as ordinary income. As to petitioners Vern H. Moberg and Reta N. Moberg, we have only the taxable years 1948 and 1949 before us. Decision will be entered under Rule 50.